UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| CAROLYN E. SMALLIDGE<br>TIMOTHY J. SMALLIDGE | : | CASE NO. |
| Plaintiffs | : | |
| v. | : | |
| OCWEN LOAN SERVICING, LLC | : | APRIL 20, 2017 |
| Defendant | : | |

**COMPLAINT**

The Plaintiffs Carolyn and Timothy Smallidge, through their attorney, file this Complaint against Defendant Ocwen Loan Servicing, LLC ("Ocwen"), and in support thereof allege as follows:

**INTRODUCTION**

1. This is an action for damages, costs, and attorney's fees arising out of Ocwen's failure to convert the mortgage modification offer it made to the Smallidges into a permanent loan modification, even after the Smallidges accepted the offer and paid consideration. The Smallidges seek relief pursuant to the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"), the Connecticut Unfair Trade Practices Act, C.G.S. § 42-110a et seq. ("CUTPA"), and state common law sounding in breach of contract and promissory estoppel.

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 12 U.S.C. § 2614 and 28 U.S.C. § 1337(a).

3. This Court also has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 as the parties are citizens of diverse states and the amount in controversy exceeds $75,000.

4. The Court has supplemental jurisdiction over the Smallidges' state law claims pursuant to 28 U.S.C. § 1367 because those claims are so related to the claims over which this Court has original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue in this District is proper as the Smallidges reside in East Lyme, Connecticut, Ocwen transacts business within the State of Connecticut, and the conduct complained of occurred in this District.

**PARTIES**

6. Mr. and Mrs. Smallidge are natural persons residing in East Lyme, Connecticut.

7. Mr. and Mrs. Smallidge are "natural persons" under CUTPA pursuant to C.G.S. § 42-110a(3), and an "individual under Regulation X" pursuant to 12 U.S.C. § 2602(5).

8. Defendant Ocwen Loan Servicing, LLC is a Delaware limited liability company engaged in the business of servicing mortgage loans in Connecticut, with its principal place of business located at 1661 Worthington Road, Suite 100, West Palm Beach, Florida 33409.

9. The Smallidges' loan is a federally related mortgage loan as defined by 12 U.S.C. § 2602(1) in that such loan is secured by a first lien on a one-family unit of residential real property and was made by a lender satisfying the requirements of 12 U.S.C. § 2602(1)(B)(i) or a creditor satisfying the requirements of 12 U.S.C. § 2602(1)(B)(iv).

10. Ocwen is the loan servicer of the Plaintiffs' loan for purposes of 12 U.S.C. § 2605.

**FACTUAL ALLEGATIONS**

11. Mr. and Mrs. Smallidge own a single family home at 26 Plants Dam Road in East Lyme, Connecticut ("the home").

12. On December 26, 2007, Mr. and Mrs. Smallidge obtained a loan secured by a mortgage on the home.

13. The servicer of the note and mortgage from the beginning of the period relevant to this complaint through the present has been Ocwen.

14. Sometime around August 2014, Mr. and Mrs. Smallidge fell behind on their mortgage payments due to a reduction in their household income.

## I. <u>Ocwen's Loan Modification Offer</u>

15. On January 22, 2015, Ocwen approved the Smallidges for a trial loan modification that required three trial payments in the amount of $1,693.09 on March 1, April 1, and May 1, 2015. See Exhibit A.

16. The Smallidges timely made all three trial payments.

17. By letter dated May 7, 2015, Ocwen acknowledged that the Smallidges had successfully completed the trial modification and provided them with a permanent loan modification offer (hereinafter, the "Permanent Modification Agreement" or the "Agreement"). See Exhibit B.

18. The Permanent Modification Agreement required that Mr. and Mrs. Smallidge sign it in front of a notary public. It did not require witness signatures (other than the notary public), nor did it contain space or lines for witness signatures. See Exhibit B.

19. On June 3, 2015, in accordance with Ocwen's instructions, the Smallidges executed the Permanent Modification Agreement in front of a notary public and returned it to Ocwen.

20. Ocwen acknowledges that it received the signed Permanent Modification Agreement from the Smallidges on June 10, 2015. See Exhibit C.

21. Thereafter, the Smallidges continued making monthly payments at the modified amount of $1,698.85, and Ocwen accepted them without incident.

22. In September 2015, Ocwen rejected the Smallidges' monthly payment, even though they were made in accordance with the Permanent Modification Agreement.

23. Mrs. Smallidge called Ocwen and asked why it rejected their payment. During this call, Ocwen informed her that it had rejected their Permanent Modification Agreement because they failed to return the "corrected final modification agreement" within the required timeframe.

24. **Mr. and Mrs. Smallidge never received a "corrected final modification agreement" from Ocwen,** and they did not learn a purported defect existed in the Permanent Modification Agreement they returned to Ocwen on June 3, 2015 until they called Ocwen in September 2015.

25. Having heard nothing from Ocwen from June 3, 2015 until September 2015, the Smallidges had no reason to suspect there was a problem with their loan. They instead believed that Ocwen had permanently modified their loan and so continued making their monthly mortgage payments, which were accepted by Ocwen.

26. Ocwen alleges that it sent the Smallidges a "corrected" modification agreement on August 6, 2015 and requested they re-execute the agreement in the presence of a notary and two witnesses. See Exhibit C.

27. When it did not receive an executed copy of the "corrected" final modification agreement back from the Smallidges by August 27, 2016, Ocwen alleges it rejected the permanent modification agreement it had entered into with the Smallidges. See Exhibit C.

28. In September 2015, when Ocwen informed the Smallidges that they should have signed the Permanent Modification Agreement in the presence of a notary and two witnesses, the Smallidges asked Ocwen to send them a copy of the "corrected" modification agreement (with witness signature lines) and they would be happy to re-execute it.

29. Ocwen refused to send Smallidges a "corrected modification agreement," stating that it was too late for them to sign a "corrected" agreement.

30. The Permanent Modification Agreement the parties agreed to includes an error correction clause at Paragraph 12, which provides the following:

> Borrower agrees to execute such other and further documents as may be reasonably necessary to consummate the transactions contemplated herein or to perfect liens and security interests intended to secure the payment of the loan evidenced by the Note. **If an error in the terms hereof is detected after the execution of this Agreement, Borrower understands that a corrected Agreement will be provided and this Agreement will be void upon notice of such error.** Should borrower elect not to sign any such corrected Agreement, the loan will revert to the terms of the original Loan Documents.

See Exhibit B.

31. Ocwen detected an error in the permanent modification agreement it drafted, **but it never provided the Smallidges with a "corrected agreement"**; therefore, the Permanent Modification Agreement remains in effect.

32. Ocwen has continued to improperly treat the Smallidges' loan as in default and has resisted their efforts to correct the execution defect Ocwen alleges exists. As a result of Ocwen's conduct, the Smallidges are now at risk of foreclosure.

## II. The Smallidges' Efforts to Obtain a Second Loan Modification

33. In September 2015, after Ocwen's unilateral breach of the Permanent Modification Agreement the parties had entered into, Mr. and Mrs. Smallidge submitted a new modification application to Ocwen in hopes that it would reissue the Permanent Modification Agreement the parties had agreed to in June 2015.

34. By letter dated November 20, 2015, Ocwen denied the Smallidges' modification application indicating that their current monthly mortgage payment was already lower than any modification it could offer them. See Exhibit D.

35. Mr. and Mrs. Smallidge submitted three additional modification applications to Ocwen and were denied on March 8, 2016, May 19, 2016, and October 19, 2016. Ocwen provided the same denial reason for each of application -- the Smallidges' current monthly mortgage payment was lower than any modification Ocwen could offer them.

## III. The Smallidges' Notices of Error and Requests for Information under RESPA

36. On September 21, 2016, Mr. and Mrs. Smallidge retained counsel and sent Ocwen a notice of error and request for information pursuant to RESPA. See Exhibit E.

37. Through the **first notice of error,** Mr. and Mrs. Smallidge formally notified Ocwen that it had made an error in servicing their loan by refusing to honor the Permanent Modification Agreement it entered into with the Smallidges effective May 1, 2015.

38. Mr. and Mrs. Smallidge asked Ocwen to correct its error by:

a. Recognizing the Permanent Modification Agreement;

b. Refunding all late fees, foreclosure fees, and default fees improperly assessed to their account; and

c. Reporting their loan as "current" to the credit reporting bureaus from May 1, 2015 til September 2016.

39. Through their **first request for information**, Mr. and Mrs. Smallidge asked Ocwen to provide them the following:

a. Proof of delivery of the loan modification agreement it alleges it sent to them in August 2015, but which they never received;

b. Statement of the reasons it required them to re-execute the loan modification;

c. Summary of the efforts it made in or around August 2015 to notify the Smallidges that it needed them to re-execute the Permanent Modification Agreement;

d. Statement of the reasons Ocwen would not allow the Smallidges to execute the "corrected modification agreement" in or around September 2015; and

e. Statement of the reasons the Smallidges were "deemed ineligible" for a loan modification in August 2015. See Exhibit E.

40. Ocwen received the first notice and request from the Smallidges on September 26, 2016, and on October 3, 2016 responded with a generic form-letter containing irrelevant information about the origination of the Smallidges' loan and about how to reinstate, neither of which were requested by the Smallidges. See Exhibit F.

41. Ocwen's boilerplate response to the Smallidges first notice and request points to a lack of meaningful investigation on its part.

42. Ocwen also failed to provide all but one of the documents the Smallidges requested in their September 19, 2016 request for information under RESPA.

43. On October 14, 2016, the Smallidges sent Ocwen a **second notice of error and request for information** reiterating Ocwen's error in failing to honor the Permanent Modification Agreement, and for a second time requesting an investigation of that error and copies of several documents. See Exhibit G.

44. Ocwen received the second notice and request on October 19, 2016 and responded on November 10, 2016. See Exhibit H.

45. In its November 10th response, Ocwen still failed to investigate and address the servicing errors the Smallidges raised in their two previous notices.

46. Ocwen also failed to provide the Smallidges with several documents they had been requesting since September 19, 2016.

47. On November 17, 2016, the Smallidges sent Ocwen a **third notice of error and request for information** and, for a third time, requested an investigation of Ocwen's failure to honor the Permanent Modification Agreement and copies of several documents. See Exhibit I.

48. Ocwen received the third notice and request on November 21, 2016 and responded on December 16, 2016. See Exhibit I.

49. In its December 16th response, Ocwen failed to provide a copy of the "corrected" modification agreement it allegedly sent Mr. and Mrs. Smallidge on August 6, 2015.

50. Ocwen also informed Mr. and Mrs. Smallidge that when it did not receive the "corrected" modification agreement back from them, it attempted to call them ***once*** on August 13, 2015, was unsuccessful in reaching them, and did not bother to leave a message.

51. Ocwen further indicated that the rejected Permanent Modification Agreement was missing witness signatures at page 5. However, the Agreement's signature page is not page 5, it is page 7, and there are no witness signature blocks on this page or any other page. See Exhibit B.

52. Moreover, the detailed instructions Ocwen provided the Smallidges for completing the Permanent Modification Agreement made no mention of witness signatures. See Exhibit B.

53. In violation of RESPA, Ocwen failed to correct the error the Smallidges complained of by either honoring the Permanent Modification Agreement or allowing the Smallidges to execute the corrected modification agreement, and also failed to provide a statement of reasons for not correcting the error.

54. In its third response, Ocwen once again ignored the Smallidges' third request for the following documents:

a. A copy of the "corrected" modification agreement Ocwen claims to have sent to the Smallidges in August 2015;

b. Proof of delivery of the "corrected" modification agreement Ocwen claims to have sent the Smallidges in August 2015; and

c. Communication and servicing logs from Ocwen's system.

55. Ocwen did, however, provide the Smallidges with their previous servicer, OneWest Bank's "Collections/Customer Service Loan Activity Archive," for the period of 2008-2012. This communication log is completely immaterial to the servicing error the Smallidges accused Ocwen of committing.

56. Ocwen has refused to honor the Permanent Modification Agreement the parties entered into in June 2015 and has also refused to offer the Smallidges a comparable loan modification, despite their many modification applications.

57. As a result of the actions and inactions of Ocwen, Mr. and Mrs. Smallidge have been improperly charged late fees, property inspection fees, and other default-related costs and fees, and have suffered damage to their credit rating.

58. As a result of the actions and inactions of Ocwen, Mr. and Mrs. Smallidge suffered and continue to suffer emotional distress. This distress has manifested physically in Mrs. Smallidge by exacerbating her existing heart disease. She has experienced tachycardia, shortness of breath, and chest pain, and has been forced to see her cardiologist on numerous occasions. During the relevant period, Mrs. Smallidge has also experienced anxiety, appetite loss, sleeplessness, depression, and sudden crying fits. Most recently, Mrs. Smallidges' primary care physician prescribed medication to relieve her anxiety and allow her to sleep. Mr. and Mrs. Smallidge are under constant stress and anxiety due to Ocwen's calls, letters, and the presence of Ocwen's agents on their property conducting inspections.

## CLAIMS FOR RELIEF

### COUNT I – BREACH OF CONTRACT

59. Mr. and Mrs. Smallidge reallege the allegations contained in paragraphs 1 through 58 as if fully stated herein and further alleges as follows.

60. In a letter dated May 7, 2015, Ocwen offered Mr. and Mrs. Smallidge a permanent loan modification. Mr. and Mrs. Smallidge accepted that offer by executing and returning the Agreement to Ocwen on June 3, 2015, and performing under its terms. See Exhibit B.

61. Mr. and Mrs. Smallidges' submission of three monthly payments, following their acceptance of the Permanent Modification Agreement, and their provision of financial information, constituted consideration for Ocwen's modification to the terms of the mortgage note.

62. The Permanent Modification Agreement constitutes a valid and binding contract, as there is evidence of an offer, acceptance, and consideration.

63. Ocwen acknowledged receiving the executed Permanent Modification Agreement from the Smallidges on June 10, 2015. See Exhibit C.

64. The Smallidges heard nothing from Ocwen from June 3, 2015 til September 2015. They continued making their monthly mortgage payments, believing Ocwen had processed their modification properly.

65. Three months after receiving the signed Permanent Modification Agreement, Ocwen refused to honor the modification and returned the Smallidges' September 2015 payment.

66. Ocwen lacked the discretion under the Permanent Modification Agreement to unilaterally disregard its terms in the face of Mr. and Mrs. Smallidge's compliance with their obligations thereunder.

67. Ocwen compounded its errors by not allowing Mr. and Mrs. Smallidge the opportunity to execute a corrected modification agreement, in direct contravention of the error corrections clause contained in the Agreement. See Exhibit B, Paragraph 12.

68. Ocwen's rejection of the Permanent Modification Agreement, and its subsequent refusal to allow the Smallidges to execute a corrected modification agreement, constitutes a breach of contract.

69. As a result of Ocwen's actions, Mr. and Mrs. Smallidge have suffered damages including, but not limited to late fees, damage to their credit rating, other default-related costs and fees from June 1, 2015 (the date Ocwen should have recognized the permanent modification of their loan) to present, and emotional distress.

70. Ocwen is liable to Mr. and Mrs. Smallidge for all the damages they have suffered and continue to suffer.

**COUNT II – VIOLATIONS OF RESPA AND REGULATION X**

71. Mr. and Mrs. Smallidge incorporate by reference the allegations in Paragraphs 1 – 58 as if fully set forth herein.

72. The Dodd-Frank Wall Street Reform and Consumer Protection Act ("Dodd-Frank") created the CFPB and amended RESPA, 12 U.S.C. §§ 2601, *et seq*.

73. On January 17, 2013, the CFPB issued the RESPA (Regulation X) Mortgage Servicing Final Rule, 78 F.R. 10695 (February 14, 2013). Regulation X became effective on January 10, 2014.

74. The CFPB collects consumer complaints, and maintains a publicly accessible online database. The CFPB database shows that since January 10, 2014, the CFPB received over 6,000 complaints from borrowers against Ocwen for issues related to loan modifications, collections, and foreclosures.

75. Among the legal duties imposed on Ocwen by RESPA is the obligation to respond to a "qualified written request" ("QWR") from a borrower either requesting correction of an error in

the handling of the account or requesting specific information related to the account. See 12 U.S.C. § 2605(e) and (k)(1)(C).

76. Pursuant to Regulation X, a QWR can take two separate forms. It can be a "notice of error," see Regulation X, 12 C.F.R § 1024.35, or a "request for information, see Reg. X, 12 C.F.R. § 1024.36.

77. Since January 10, 2014, the CFPB has received at least 24 complaints against Ocwen for failing to properly respond to QWRs.

78. Mr. and Mrs. Smallidge submitted QWRs to Ocwen on September 21, 2016, October 14, 2016, and November 17, 2016. Each inquiry included a notice of error, as defined by Reg. X, 12 C.F.R. § 1024.35(b), and a request for information, as defined by Reg. X, 12 C.F.R. § 1024.36(a). See Exhibits E, G, and I.

79. Upon receipt of the notices of error, Reg. X required Ocwen to conduct a reasonable investigation of the matters raised in the notice of error, and within 30 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the notice of error, provide Mr. and Mrs. Smallidge a written notice, **either** informing them the errors were corrected **or** stating that no error occurred and advising them of their right to request relevant information and documents. See Reg. X, 12 C.F.R. § 1024.35(e)(1) and (3).

80. Within 30 days (excluding legal public holidays, Saturdays, and Sundays) of receiving the requests for information, Reg. X required Ocwen to provide Mr. and Mrs. Smallidge with the requested information **or** conduct a reasonable search for the requested information and provide them with a written notification that the requested information was not available to the servicer. See Reg. X, 12 C.FR. § 1024.36(d)(1) and (2).

***Ocwen Failed to Properly Respond to the Smallidges' First QWR***

81. With respect to Mr. and Mrs. Smallidge, Ocwen violated RESPA by failing to conduct a "reasonable investigation" within the meaning of Reg. X, § 1024.35(e) of the various matters raised in the Plaintiffs' first notice of error.

82. On October 3, 2016, Ocwen sent the Smallidges a form letter in response to their first notice of error. The letter included boilerplate language that completely ignored the errors the Smallidges had complained about, and contained irrelevant information about the origination of their loan and reinstatement. See Exhibit F.

83. Ocwen also violated Reg. X § 1024.36 by failing to provide Mr. and Mrs. Smallidge with 11 of the 12 loan-related items they requested on September 19, 2016, without explanation.

***Ocwen Failed to Properly Respond to the Smallidges' Second QWR***

84. On November 10, 2016, Ocwen responded to the Smallidges' second notice of error, but incorrectly stated that it did not receive the Permanent Modification Agreement back from the Smallidges' within the required timeframe, and for this reason denied their modification. See Exhibit H.

85. Ocwen's response demonstrates that it did not reasonably investigate the Smallidges' notice of error as required by §1024.35. Had Ocwen conducted even a cursory review of its records, it would have quickly noted that it received an executed Permanent Modification Agreement from the Smallidges on June 10, 2015. See Exhibit C.

86. Ocwen also violated § 1024.36 by failing to provide Mr. and Mrs. Smallidge with the following documents, without explanation:

a. A copy of the "corrected" modification agreement Ocwen claimed to have sent the Smallidges in August 2015;

b. Proof of delivery of the “corrected” modification agreement Ocwen claimed to have sent the Smallidges in August 2015;

c. Communication logs for the loan;

d. Servicing logs for the loan; and

e. Servicing file for the loan, to the extent it does not already include the documents listed above.

***Ocwen Failed to Properly Respond to the Smallidges' Third QWR***

87. On December 16, 2016, Ocwen responded to the Smallidges’ third notice of error, but in violation of § 1024.35 again failed to **either** correct the error **or** explain why it could not allow the Smallidges to execute the corrected loan modification agreement in September 2015, and why it deemed them ineligible for a modification. See Exhibit I.

88. In its third response, Ocwen contradicts its previous statement, and admits that it received a signed Permanent Modification Agreement from the Smallidges on June 10, 2015. See Exhibit J at 3.

89. Ocwen again violated § 1024.36 by failing to provide Mr. and Mrs. Smallidge with the following documents, without explanation:

a. A copy of the corrected modification agreement Ocwen claimed to have sent the Smallidges in August 2015;

b. Proof of delivery of the corrected modification agreement Ocwen claimed to have sent the Smallidges in August 2015; and

c. Servicing and communication logs for the loan for January 2013 to present.

90. Ocwen’s failure to comply with its obligations under RESPA with regard to the Smallidges’ qualified written requests, and the requests of other mortgage servicing clients (as evidenced by the CFPB database) constitutes a pattern or practice of noncompliance with the requirements of 12 U.S.C. § 2605(e).

91. As a direct, proximate, and foreseeable result of the Ocwen's non-compliance with the above-described obligations, Mr. and Mrs. Smallidge suffered actual damages including damage to their credit rating, and upon information and belief, late fees, and default-related costs and fees.

92. As a result of Ocwen's actions and inactions, Mr. and Mrs. Smallidge also suffered and continue to suffer emotional distress. This distress has manifested physically in Mrs. Smallidge by exacerbating her existing heart disease. She has experienced tachycardia, shortness of breath, and chest pain, and has been forced to see her cardiologist on numerous occasions. During the relevant period, Mrs. Smallidge has also experienced anxiety, appetite loss, sleeplessness, depression, and sudden crying fits. Most recently, Mrs. Smallidge's primary care physician prescribed medication to relieve her anxiety and allow her to sleep. Mr. and Mrs. Smallidge are in a constant state of fear and angst due to Ocwen's collection calls, letters, and the presence of Ocwen's agents on their property conducting inspections.

93. As a result of the above violations, Ocwen is liable to Mr. and Mrs. Smallidge for actual and consequential damages, including emotional damages, costs, and attorneys' fees.

94. Ocwen is also liable to Mr. and Mrs. Smallidge for statutory damages of $2,000 per violation pursuant to 12 U.S.C. § 2605(f)(1)(B), given its pattern or practice of noncompliance with RESPA, as evidenced by the following:

a. Ocwen's failure, on <u>three different occasions</u> to either correct the error, as required by § 1024.35, or conduct a reasonable investigation into the Smallidges' complaint, and provide them a "statement of the reason or reasons" for its determination that "no error occurred."

b. Ocwen's use of boilerplate or form letter in response to the Smallidges' first QWR, suggesting no reasonable investigation was conducted;

c. Ocwen's contradictory statements regarding whether or not it received a signed permanent modification from the Smallidges, reflected in its second and third response to the their QWRs, and suggesting it failed to conduct a reasonable investigation;

d. Ocwen's failure to provide the Plaintiffs, in response to their three requests for information, either:

   i. A copy of the "corrected" modification agreement it claimed to have sent them in August 2015, proof of delivery of that modification, and servicing and communications logs; or

   ii. A written notification stating that it had determined the requested information was not available to it, and providing the basis for its determination, as required by § 1024.36.

e. The 24 complaints the CFPB has received against Ocwen for failing to properly respond to QWRs since January 10, 2014;

**COUNT III – VIOLATION OF CUTPA**

95. Mr. and Mrs. Smallidge incorporate by reference the allegations in Paragraphs 1 – 94 as if fully set forth herein.

96. Mr. and Mrs. Smallidge are "persons" within the meaning of C.G.S. § 42-110b, as defined in Section 42-110a(3).

97. Ocwen's actions were done in the conduct of trade or commerce.

98. Ocwen has engaged in unfair and/or deceptive acts or practices within the meaning of C.G.S. § 42-110b(a) including, but not limited to:

a. Failing to inform Mr. and Mrs. Smallidge, via written instructions or otherwise, that they needed to execute the Permanent Modification Agreement in the presence of a notary and two witnesses;

b. Failing to inform Mr. and Mrs. Smallidge that their modification had been rejected because it lacked witness signatures until September 2015, three months after it received the executed the Permanent Modification Agreement;

c. Violating the Permanent Modification Agreement's error corrections clause by failing to provide Mr. and Mrs. Smallidge a "corrected" modification agreement, despite having identified a defect in the agreement it received in June 2015;

d. Denying Mr. and Mrs. Smallidge the opportunity to sign a "corrected" modification

agreement in September 2015, when Ocwen informed them that the original agreement was rejected;

e. Ignoring Mr. and Mrs. Smallidges' three additional requests to sign a "corrected" modification agreement as presented in their notices of error; and

f. Refusing to offer Mr. and Mrs. Smallidge a similar modification agreement in response to their four (4) subsequent loan modification applications;

99. Ocwen's actions have offended public policy requiring servicers to:

a. Act with reasonable diligence in reviewing a borrower's request for modification;

b. Communicate promptly and accurately with borrowers about further documentation; and

c. Investigate, respond to, and, as appropriate, make corrections in response to complaints asserted by the borrowers.

100. This public policy is reflected in the National Servicing Settlement Consent Judgment against Ocwen, and the Mortgage Servicing Rules promulgated under RESPA, as explained below.

101. The Mortgage Servicing Rules require a servicer "provide a borrower with accurate and timely information and documents with respect to borrower's mortgage loan" and "investigate, respond to, and, as appropriate, make corrections in response to complaints asserted by the borrower." 12 C.F.R. § 1024.38(b)(1). Ocwen failed to both: (1) provide the Smallidges with accurate and timely information regarding their Permanent Modification Agreement, and (2) properly investigate and timely respond to the Smallidges' complaints regarding Ocwen's failure to process their modification.

102. The CFPB and 49 states, including Connecticut, entered into a consent agreement with Ocwen in December 2013 ("Consent Judgment").[1] Among other things, the Consent Judgment requires Ocwen to adhere to minimal levels of quality in default mortgage servicing. The standards

[1] National Mortgage Settlement, Exhibit A to the Consent Judgment, Case No. 1:13-cv-02025-RMC, available at https://nationalocwensettlement.com/Portals/0/Documents/ConsentJudgement.pdf.

include, but are not limited to:

a. Maintaining adequate staffing and systems for tracking borrower documents and information relevant to loss mitigation, and for communicating with borrowers;

b. Establishing a "reliable single point of contact" (SPOC) who shall have the primary responsibility of, among other things, coordinating receipt of all documents associated with loan modification or loss mitigation activities, and helping "to clear for borrower any internal processing requirement";

c. Ensuring adequate and competent staff to answer and respond to consumer disputes promptly; and

d. Taking appropriate action to promptly remediate any inaccuracies in a borrower's account information;

103. In dealing with the Plaintiffs, Ocwen repeatedly and continuously failed to comply with the National Mortgage Settlement by failing to establish a "reliable single point of contact" to:

a. Coordinate receipt by Ocwen of all loan modification documents;

b. Respond to the Smallidges' concern that they did not receive a "corrected" modification agreement in August 2015; and

c. Remediate the defect Ocwen caused in the Permanent Modification Agreement, by providing the Smallidges a corrected copy of the agreement to execute in September 2015, when they learned of the defect.

104. Ocwen's conduct with respect to servicing the Smallidges' mortgage was willful, immoral, unscrupulous, unethical, and oppressive. The Smallidges complied with each of Ocwen's requests during the loss mitigation process, including executing the Permanent Modification Agreement in accordance with Ocwen's detailed instructions, and making monthly payments at the modified amount. Meanwhile, Ocwen rejected the Agreement months after execution, improperly treated the Smallidges' loan as in default, and resisted their efforts to sign a corrected modification agreement.

105. Ocwen's actions and omissions in servicing the Smallidges' mortgage exhibit a blatant disregard for their well-being, and has caused them substantial injury. The injury is not outweighed

by countervailing benefits to consumers that the conduct produced, nor was it one that the Smallidges could have reasonably avoided.

106. Ocwen's conduct was deceptive. Ocwen made an error in drafting the Smallidges' Permanent Modification Agreement, when it failed to include witness signature lines on the signature page and failed to mention that witness signatures were required in its instructions. Yet instead of correcting its error by providing the Smallidges with a corrected modification agreement, it waited three months to inform them of the error, then refused to allow the Smallidges to sign a corrected agreement. Instead, Ocwen denied the Permanent Loan Modification the Smallidges' had been performing under and had a contractual right to receive.

107. As a direct, proximate, and foreseeable result of Ocwen's foregoing acts and omissions, the Plaintiffs have suffered an ascertainable loss as that term is used in C.G.S. § 42-110g(a). These damages are financial and emotional. The Smallidges suffered financial injury in the form of late fees, default-related fees and costs, and copying and mailing fees incurred in preparing four additional loan modification applications, and in submitting three qualified written requests.

108. The Smallidges also experienced emotional distress as a result of the Ocwen's actions. There is an established connection between foreclosure, or the threat thereof, and serious physical and emotional health problems. In Mrs. Smallidge, this distress has manifested physically and exacerbated her existing heart condition. She has experienced tachycardia, shortness of breath, and chest pain, and has been forced to see her cardiologist on numerous occasions. During the relevant period, Mrs. Smallidge has also experienced anxiety, appetite loss, sleeplessness, depression, and sudden crying fits. Most recently, Mrs. Smallidge's primary care physician prescribed medication to relieve her anxiety and allow her to sleep. Mr. and Mrs. Smallidge are in a constant state of fear and angst due to Ocwen's collection calls, letters, and the presence of Ocwen's agents on their

property conducting inspections.

109. As a result of its violation of CUTPA, Ocwen is liable to the Plaintiffs for actual and consequential damages, costs, and attorney's fees pursuant to C.G.S. § 42-110g(d).

110. A copy of this pleading has been electronically mailed to the Attorney General and the Commissioner of Consumer Protection pursuant to C.G.S. § 42-100g(c).

**PRAYER FOR RELIEF**

The Plaintiffs respectfully requests that judgment be entered against the Defendant for the following:

(1) Statutory damages pursuant to 12 U.S.C. § 2605(f)(1)(B);

(2) Actual and consequential damages;

(3) Punitive damages in an amount calculated to punish Ocwen for its willful and egregious conduct, pursuant to C.G.S. § 42-110g(a);

(4) Costs and reasonable attorney's fees pursuant to 12 U.S.C. § 2605(f)(1)(C), C.G.S. § 42-150bb, C.G.S. § 42-110g(d); and

(5) For such other and further relief as the Court deems just and proper.

THE PLAINTIFFS
CAROLYN AND TIMOTHY SMALLIDGE

By Counsel: /s/ Loraine Martinez

Loraine Martinez (ct29220)
Jeffrey Gentes (ct28561)
Connecticut Fair Housing Center
221 Main Street, 4th Floor
Hartford, CT 06106
(860) 263-0732
(860) 247-4236 fax
Lmartinez@ctfairhousing.org